ADAMS *vs*. THE EATHERLY HARDWARE COMPANY.

1. Where suit was brought against a person as surviving partner of a firm for goods sold, and he knew of the existence of the firm at the time of the purchase, and the question was whether the goods were sold to the other partner individually or to the firm, the plaintiffs were incompetent to testify that they had dealt with the partner who was dead, and how it came that they treated with him individually and not with the firm, though claiming that the firm was bound for the price of the goods. Such parties were incompetent at common law, and were not rendered competent by the act of 1866, where the other party was dead.

(a) The testimony was also inadmissible as relating to what passed in the plaintiffs' minds, and of their conclusions and impressions.

2. Certain letters written by the plaintiffs to third parties, which tended to show that the goods were sold to the dead partner individually and not to the firm, and that their account was against him, were admissible as bearing upon the point in issue; and it was error to reject them.

3. The newly discovered evidence to the effect that the plaintiffs, upon receipt of information from the decedent that the goods were being purchased by himself, ratified such arrangement by telegram and made him, and not the firm, their debtor, and thus relieved the other former partner from liability, can be introduced on another trial.

May 4, 1887.

Partnership. Witness. Evidence. Before Judge JOHN T. CLARKE. Clay Superior Court. September Adjourned Term, 1886.

The Eatherly Hardware Company, a partnership, brought complaint on an open account against D. C. Adams, surviving partner of C. L. Laney & Company, a firm composed, as alleged, of C. L. Laney (deceased) and D. C. Adams. The defendant pleaded the general issue, and that he was not the surviving partner of Laney & Co. On the trial, the evidence for the plaintiffs was, in brief, as follows: The goods sued for were shipped, and an invoice, dated September 17, 1885, and stating C. L. Laney & Co. as the purchasers, was forwarded and entered on the invoice-book kept by Laney and checked off. The correspondence leading to the shipment consisted of several letters, dated in July and August, 1885, those written by plaintiffs being directed to C. L. Laney and he signing the order directed to them. One of the plaintiffs testified that he addressed Laney individually because he was the active man of the firm, did the buying and, as witness understood, had general supervision; that it was a common occurrence for plaintiffs to write such letters and for the various individual members of their firm to receive such letters written to them about business of the firm; and that he did not know before the goods were shipped that the firm of Laney & Co. was dissolved. Another of the plaintiffs testified that Adams told him that Laney was the buyer and Adams did not stay in the store much; and that witness knew that Laney was in the store and could and would probably answer promptly.

The evidence for the defendant was, in brief, as follows: The firm of Laney & Co. was dissolved on or about July 2, 1885, Adams selling his interest to Laney; and then Laney carried on the business in his own name, Adams having no connection with it. Everybody knew this, and Laney was generally regarded as the sole owner of the business. Adams had a notice of the dissolution put in the local newspapers, though no copies were sent to the home of plaintiffs. Adams knew nothing of the bill of goods sued for, but identified the invoice as that found in the invoice-book of Laney. Such invoices are kept by merchants to mark the goods and for reference. He presumed that it was the custom of merchants to check off such invoices; some keep invoice-books and others books of bills payable. He was not a member of the firm of Laney & Co. when these goods were bought and knew nothing of them; he never authorized any one to order such goods in his name or that of the firm. He admitted that he had paid plaintiffs a small bill which was presented, because he thought Laney & Co. responsible for it. He saw a bolt sold, and told Laney to get him one like it, which was done, but he knew not where from. He denied having the conversation with one of plaintiffs' firm testified to by the latter. Laney afterwards failed, and is now dead. Laney & Co. had dealings with plaintiffs prior to dissolution.

A letter from Laney to plaintiffs, dated September 15, 1885, was introduced. It stated that the invoice of September 7 was to "C. L. Laney & Co."; that there was no such firm then extisting, and the bill should be changed to "C. L. Laney"; and requested plaintiffs to make the correction.

The jury found for the plaintiffs. The defendant moved for a new trial on several grounds, the substance of those material being as follows:

(1) Because the verdict was contrary to law and evidence.

(2) Because the court permitted two of plaintiffs to testify in relation to correspondence with Laney and want of knowledge of dissolution of the firm.   The objections were that Laney was dead, and the witnesses therefore incompetent; and that the plaintiffs could not contradict their written letters by parol testimony.   The court held that the defendant having introduced part of the answers of plaintiffs to interrogatories in order to prove the execution of the letters, it was admissible to explain the admission.

(3) Because the court excluded two letters written by plaintiffs to Peterson & Co., dated October 29 and 30, 1885. These letters stated, in substance, that Laney's account was enclosed, and requested Peterson & Co. to see after it; that they had shipped Laney, a few days before, certain axes, which, if received, Peterson & Co. would have shipped back if they could get possession of them; and that they get the attorney to whom they entrusted the claim of plaintiffs to act for their best interest.

(4) Because of newly discovered evidence to show that, in response to Laney's letter of September 15, above mentioned, plaintiffs sent him a dispatch, acknowledging receipt of the letter, and stating that they would charge the goods to him instead of to Laney & Co.

The motion was overruled, and the defendant excepted.

A. Hood, by J. H. Lumpkin; W. D. Kiddoo; Clarence Wilson, for plaintiff in error.

No appearance for defendants.

Blandford, Justice.

The question in this case was, whether certain goods had been sold by the Eatherly Hardware Company to C. L. Laney individually, or to C. L. Laney & Co.  Upon the trial of the case, Eatherly and another member of the firm (the Eatherly Hardware Company), over objection of

the defendant, were allowed to testify that these goods had been sold to Laney, and how it came that they treated with Laney individually and not with Laney & Co. Laney being dead, it was objected that this testimony was inadmissible. The court overruled that objection and allowed the testimony.

We think the court was wrong. Under the act of 1866, Laney being dead, these parties were incompetent witnesses. They were incompetent at common law, and could only be competent under the statute; yet by the provisions of the act of 1866, which prescribes that where one of the original parties to the contract or cause of action is dead, the other party shall not be permitted to testify, the law is left just where it stood before the passage of the act. For this reason, we think that the court erred. Furthermore, we think the testimony itself was inadmissible. They testified as to what took place in their own minds; to conclusions they had arrived at. Their impressions were allowed to go to the jury. This was improper testimony.

2. The defendant introduced, or offered to introduce in evidence, certain letters written by the Eatherly Hardware Company to Peterson & Co., which tended to show that the goods were sold to Laney, and not to Laney & Co. These letters stated that the account was against C. L. Laney, and directed Peterson & Co. to protect their rights. The court rejected the letters. We think this was error. This testimony tended to show that the goods were sold to Laney individually, and the court erred in rejecting it.

3. Another ground of the motion was in regard to newly discovered evidence, part of which was a certain telegram, which if introduced in evidence would have shown conclusively that while the goods were originally charged to Laney & Co., yet Laney having informed the Eatherly Hardware Company of the dissolution of the firm and that the goods were being purchased by himself, they ratified it as a sale to Laney individually, and made him their debtor

and not Laney & Co. On another trial of the case, this evidence can be admitted, and will show very clearly that there is no liability on the part of Adams as surviving partner of Laney & Co.

We think the court below erred in refusing to grant a new trial; and the judgment is reversed.